IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

AUG 03 2022

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

LARRY KING,               )
                          )
        Plaintiff,        )
                          )
                          )        Civil Action File No:
                          )
v.                        )        **1:22-CV-3064**
                          )        _____
                          )
                          )        JURY TRIAL DEMANDED
City Council, City of Hampton, Georgia   )
Attorney for City of Hampton, Georgia    )
Alex Cohilas (both in his Official capacity )
as City Manager and individual Capacity) )
City of Hampton Police Department        )
James "Bo" Turner, Chief of Police (both in )
his Official capacity as Chief and individual )
Capacity Mayor of Hampton, Georgia,      )
Steve Hutchinson                         )
Henry County Board of Commissioners.     )
The County Administrator.                )
The County Director of Human Resources   )
                          )
        Defendants.       )

## PLAINTIFF'S FIRST COMPLAINT FOR DAMAGES

COMES NOW LARRY KING (hereinafter "Plaintiff" or "Mr. King"),

Plaintiff in the above-styled matter, and files this his First Complaint for Damages

and Injunctive Relief and shows as follows:

## NATURE OF ACTION

1.

Plaintiff asserts that the Defendants has violated Title VII of the Civil Rights

Act of 1964, as amended, ("Title VII") 42 U.S.C. § 2000e, et seq., by

discriminating against him on the basis of his race (African-American) and retaliating against him for opposing unlawful employment practices under Title VII.

2.

Plaintiff also asserts that the Defendants has violated his right to freedom of religious beliefs by discrimination under Title VII, by discriminating against him on the basis of Mr. King's religious beliefs promoting a beard and facial hair wore in a particular manner and retaliating against him for opposing unlawful employment practices under Title VII.

3.

Plaintiff also asserts that the Defendants has violated the False Claims Act, 31 U.S.C. § 3730, by retaliating against him for opposing unlawful employment practices under the False Claims Act. *See* 31 U.S.C. § 3730(h).

4.

Plaintiff further asserts that the Defendants breached the Employment Agreement Plaintiff executed with Defendant on or about February 24, 2007, when Plaintiff was denied the appropriate raise of 3.5% for his performance review as a law enforcement officer. This review process that was substantially delayed for three (3) months as other officers were evaluated and giving raises for subpar performance, as Mr. King's evaluation was ignored. After this conspired delay of the Plaintiff's review was accomplish a below standard review was assigned and

Plaintiff received no raise.. Soon after this review Plaintiff was then demoted from sergeant to officer with a significant salary decrease. Defendants demoted Plaintiff without proper due process and eventually threatened to terminate Plaintiff allegedly "for cause" on June 21, 2022, without prior notice or warning.

## STATUTORY BASIS FOR ACTION

### 5.

Pursuant to Title VII, 42 U.S.C. § 2000e-2(a),

> It shall be an unlawful employment practice for an employer—
> **(1)** to . . . discriminate against any individual with respect to [his] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, region, sex or national origin.;
> **(2)** to limit, segregate, or classify [its] employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect [his] status as an employee, because of such individual's race, color, religion, sex, national origin.

### 6.

Pursuant to Title VII, 42 U.S.C. § 2000e-3(a),

> It shall be an unlawful employment practice for an employer to discriminate against any of [its] employees . . . to discriminate against any individual . . . because [he] has opposed any practice made an unlawful employment practice by this title [42 USCS §§ 2000e–2000e-17], or because [he] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title [42 USCS §§ 2000e–2000e-17].

7.

Pursuant to the False Claims Act, 31 U.S.C. § 3730(h),

> Any employee . . . shall be entitled to all relief necessary to make such employee . . . whole, if that employee . . . is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by such employee . . . in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter [31 USCS §§ 3721 et seq.].

## JURISDICTION AND VENUE

8.

This Court has jurisdiction over the subject matter of this action pursuant to 38 U.S.C. § 4323(b)(3).

9.

Venue is proper in this District under 38 U.S.C. § 4323(c)(2) and 28 U.S.C. § 1391(b), because Defendants, (City Council, City of Hampton, Georgia, Attorney for City of Hampton, Georgia L'Erin Wiggins, Alex Cohilas (both in his Official compacity as City Manager and individual Capacity, City of Hampton Police Department, James "Bo" Turner, Chief of Police (both in his Official compacity as Chief and individual Capacity, Mayor of Hampton, Georgia, Steve Hutchinson, Henry County Board of Commissioners, and The County Administrator (collectively referred to as "City of Hampton").

The City Director of Human Resources for the City of Hampton is registered and maintains a place of business in this judicial district at: 17 E Main Street S. Hampton, GA 30005, as well as exercise authority or carries out any functions within this District and this Division.

10.

All statutory conditions precedent to the initiation of this lawsuit have been fulfilled in accordance with Civil Rights Act of 1964 (42 U.S.C. § 2000e, et seq. and 29 U.S.C. § 621, et seq.)

## **PARTIES**

11.

The Plaintiff is an individual residing in Georgia, within this District and this Division.

12.

The Defendants are individuals who are employed by the City of Hampton through a municipal corporation created and existing under the laws of Georgia as government officials in a domestic corporation licensed and registered to promote economic vitality, stimulate commerce, industry and employment opportunities for the general public welfare in within the City of Hampton and the State of Georgia and can be served through its City Attorney, Ms. L'Erin Barnes. Wiggins at: L F Barnes Law, LLC 2198 Parkview Run, Atlanta, GA, 30318.

## STATEMENT OF FACTS

13.

Pursuant to the Employment Agreement dated February 24, 2005 (the "Agreement") Defendant engaged Mr. King to serve as a police officer for the City of Hampton Police Department on or about February 24, 2005.

14.

Mr. King's base salary as Sargent was $64,842.00 per year. The Agreement further provides that once Plaintiff reached the rank of Lieutenant his base salary would have been $67,233.31 per year and then would increase to $85,427.95 per year if Plaintiff obtained the rank of Chief of Police.

15.

Mr. King was hired for a term that would continue indefinitely unless his employment was terminated pursuant to the terms and conditions of the Employment Agreement or Polices, and Codes established in the Law Enforcement Handbook for the City of Hampton.

16.

In addition to his base salary, Mr. King had an opportunity to earn incentive raises based on performance evaluations in the amount of $2,269.47 and an annual raise up to three and half percent (3.5%) of his salary.

17.

During his tenure with the City of Hampton Police Department, Mr. King was instrumental in improving the community's awareness of City Codes and Ordinances of Hampton as well as creates a presence that would deter crimes and promote community well-being. For example, Mr. King reduced the overall crime rate in the sections of the City of Hampton he patrolled and monitored. More importantly, Mr. King reduced domestic disturbances and petty theft throughout the City of Hampton by being accessible to the whole community to answer questions and give guidance on how to handle certain situations.

18.

As a result, Mr. King was repeatedly praised for his outstanding work and willingness to work long hours. Mr. King received many of these compliments during the last few years of his employment with Defendants. However, all of this changed when Alex Cohilas and Chief James "Bo" Turner took over the decision making in Hampton.

19.

Throughout his tenure with the Defendants, Mr. King was subjected to a pattern and practice of discrimination based on his race/color (African American) as well as his religious beliefs and practices. This included, to wit, the City Manager of City of Hampton, Alex Cohilas ("Mr. Cohilas"): stating "it's a white man's world"; Mr. Cohilas routinely hiring white male and white female

employee's overqualified individuals of color; and Mr. Cohilas stating that there was no room for any colored people in a position of authority at the Hampton Police Department.

20.

Within in the last 8 months of his employment with Defendants, Mr. King expressed his concerns and displeasement to the quorum of attendees and Councilmen at a City Hall Meeting in the City of Hampton on August 17, 2021. Mr. King was concerned with the discrimination and the inappropriate procedure of placing a lesser qualified white male in the position Mr. King was highly qualified to handle and had completely followed all procedures and tests necessary to named next Chief of Police in the City of Hampton.

21.

However, nothing was done to address his concerns and numerous community members began to express their concerns regarding the process used to replace the retired Chief of Police.

22.

Immediately after that City Hall meeting Mr. King was subject to a hostile work environment and received numerous improper infractions and write ups from the new Chief of Police.

23.

At first the application process was opened for all applicants to submit the appropriate paperwork, any letters of recommendation and the test results from the required tests to be eligible for the position of Chief of Police. The application process was closed with Mr. King being the leading candidate to be promoted to the Captain rank and ultimately into the Chief of Police position. However, neither promotion ever occurred.

24.

After this injustice was revealed at the City Hall Meeting, several councilmen came forth and explained why the process was reopened and another officer was placed into the Chief of Police position. One of the members of the council stated that the City Manger had made the comment that a black officer (Mr. King) would not get that that position and he had already picked out who was going to be the next Chief of Police.

25.

The City Manager had also threatened numerous City of Hampton employees and councilmen that "things were going to be handled My Way, because this is the way it should be done." This declaration was followed with the statement of "If you stick with me I will protect you." These comments along with his "wants to control of everything attitude" is identical to the actions and reasons that caused Clayton County to force him out of his position in that County.

26.

In response to the concerns raised by Mr. King at the City Hall Meeting, Defendants began their retaliation schemes against Mr. King  and the support shown by the community to have Mr. King appointed as their next Chief of Police of Hampton, Georgia by maliciously and discriminating in ways which included alleging violations of City of Hampton's policies for Police Officers for the City.

27.

These discriminatory contentions started on November 10, 2021 when Mr. King's facial hair was determined to be out of compliance with the City's Law Enforcement Grooming policy even though the policy had exclusion due to demonstrated religious beliefs.  After a lengthy process of filling out paperwork, requesting accommodations based on his religious beliefs and explanations to his superiors, the Chief of Police himself denied his request, suspended him and commanded him to comply with the City's policy.

28.

Shortly after this retaliatory punishment against Mr. King, the City Manager and the Chief of Police randomly decided to announce that all police officers in the City of Hampton shall no longer say "God Bless" to the citizens in Hampton under any circumstances.

29.

As Mr. King's tenure as a Sergeant at the City of Hampton Police Department continued to be scrutinized by the City Manager, City Council and now some of his own fellow police officers, Mr. King began to notice other African American officers being criticized, written up and eventually pushed out of their employment with the police department at the direction of the City Manager.

30.

Mr. King also observed numerous contracts with the City of Hampton being taken from minority companies and given to companies owned and operated by white people. The Defendants steadfastly refused to stop operating the fraudulent means of discriminating against the minority police officers and local business owners until the City Manager had placed all of his friends into positions that would further his injurious plan or at least not oppose his objectives and prejudicial ways.

31.

This retaliatory discrimination continued by the Defendants' actions of attempting to squeeze Mr. King out of the Police force and the community of Hampton, Georgia through reducing his pay and demoting him until he was either terminated or forced to resign. . The evaluation process enacted by the City Manager approximately four (4) years ago that required an evaluation to be completed on each member of the Police Department to decide what amount to be

given to the employee as compensation for their work and achievements throughout the last year.   Mr. King's evaluation was the last to be completed and was three months beyond the usual required date to have the evaluation completed.

32.

The evaluation was submitted with a score well below the self assessed grade Mr. King had given his own performance.  Due the low score and lack of increase in pay, Mr. King requested a review of his evaluation.  On May 6, 2022 through a letter from the Chief of Police, Plaintiff's score was changed to increase his performance level scores one number higher across the board than what was initially given as a score in every category reviewed.  The only explanation given for the increase was that Mr. King was handling administrative work while earning his Associates Degree during a large portion of the year.

33.

The Defendants' efforts to terminate Mr. King continued as he began receiving notices for alleged "insubordination and refusal to sign certain paperwork . . . that violated the City of Hampton's policies" until the Police Chief finally suspended, demoted and took a large portion of Mr. King's salary on an incident that he allegedly had a complaint filed against him in his line of duty.

34.

On May 26, 2022, Plaintiff was given notice of intent to discipline from an incident that supposedly happened while on a call regarding domestic violence at a

location that the City of Hampton had endured numerous calls of the same nature throughout the year.  Each call was resolved by using various methods which seemed to accommodate the situation at hand.  With the Council, the City Manager and the Chief setting forth a punishment for Mr. King's actions and instruction to the other Officer handling the call at that location, a punishment was issued to suspend, demote, change shift from day shift to night shift on patrol along with taking a substantial portion of Mr. King's salary without affording Plaintiff the opportunity to review the alleged complaint nor Internal Affair's assessment of the situation and to present his side of the story which appropriate due process would have provided Mr. King.

35.

This demotion, reduction of salary and defamatory statements about Plaintiff to his fellow employees, presented Plaintiff with the actual feeling that he could no longer trust the fraternal bond of the other City law enforcement to protect him at the same level he would protect them in event of a situation where gun fire was present.  Without that level of confidence that his fellow police officer would protect him and cover his back in that situation during a call to a known violent area, Mr. King eventually had no other choice but to tender his resignation to the Chief of Police before the City of Hampton fired him for not signing the paperwork that confirmed his demotion, the loss of pay as well as adding a condition that would allow termination of Plaintiff if accused of any other

violations of the City's policy without even being afforded the due process of an appeal of that decision.

36.

The Defendants never gave Plaintiff a viable chance to file an appeal to resolve this matter. The actual date the City Attorney scheduled the appeal to be heard was on June 20, 2022. The day that the City of Hampton was to celebrate Juneteenth, a Federal Holiday to celebrate the final emancipation of the slaves in Texas. Thus, the communication sent to secure the date for the appeal was again an apparent discriminatory act to show bias against Plaintiff due to the color of his skin.

37.

Because the attempt to have the Plaintiff's appeal on the discipline issued was not successful, Mr. King thereafter filed this Complaint of Discrimination with the Federal Court even though Counsel for Plaintiff had issued an Ad Litem Notice to the City regarding these discriminatory practices prior to the retaliatory acts that were continuously directed at African American employees of the City and the contracts with business owners of the same color.

## COUNT 1—Discrimination in Violation of Title VII

## (42 U.S.C. § 2000e, et seq.)

38.

Mr. King realleges and hereby incorporates by reference paragraphs 1-37 of this Complaint with the same force and effect as if pleaded separately herein.

39.

The Defendant engaged in a pattern and practice of discrimination against Plaintiff based on his color (African American) in violation of Title VII of the Civil Rights Act.

40.

Defendant's violation of Title VII was willful, pervasive, and condoned by the City Council to create a hostile work environment.

41.

During Plaintiff's employment tenure with Defendants and despite the discrimination and harassment he experienced based on his color and then religious beliefs, Mr. King not only continued to perform his duties as a Sargent in the Police Department but far exceeded the criteria placed on him while employed with Defendants.

42.

Despite far exceeding Defendant's standards of employment, Mr. King experienced harassment and adverse treatment by Defendants in forms of punishment to his religious beliefs and decisions in the field.

43.

Mr. King's similarly situated white coworkers were treated more favorably and were not subjected to harassment or adverse treatment by Defendants.

44.

As a direct and proximate result of the discriminatory conduct by the Defendants, Mr. King has suffered injury including, but not limited to, loss of wages and benefits of employment.

## COUNT 2—Retaliation in Violation of Title VII Unlawful Employment Practices (42 U.S.C. § 2000e-3(a))

45.

Mr. King realleges and hereby incorporates by reference paragraphs 1-44 of this Complaint with the same force and effect as if pleaded separately herein.

46.

The Defendants retaliated against Mr. King for complaining about the discrimination he was experiencing when maliciously ignored as the best candidate for the Chief of Police through as the blatantly deceptive process of reopening the application process to allow a white individual to inappropriately be awarded the position of Chief of Police through a decision made in June of 2021 in violation of Title VII, 42 U.S.C. § 2000e-3(a).46.

Defendant's alleged justification for Mr. King's termination was pretextual. Mr. King was not insubordinate nor violating any policies of the City of Hampton. Rather, Mr. King was being punished for opposing Defendant's numerous unlawful employment practices.

47.

As a direct and proximate result of the retaliatory conduct by the Defendants, Mr. King has suffered injury including, but not limited to, loss of wages and benefits of employment.

## COUNT 3

### Discrimination in Violation of Title VII- Religious Beliefs

### (42 U.S.C. § 2000e, et seq.)

48.

Mr. King realleges and hereby incorporates by reference paragraphs 1-47 of this Complaint with the same force and effect as if pleaded separately herein.

49.

The Defendants engaged in a pattern and practice of discrimination against Mr. King based on his religious beliefs in violation of Title VII.

50.

Defendants' violation of Title VII was willful, intentional, and pervasive.

51.

During his tenure with Defendants, and despite the discrimination and harassment he experienced based on his color and religious beliefs, Mr. King not only met but far exceeded the criteria placed on him while employed with Defendants.

52.

Despite far exceeding Defendant's standards of employment, Plaintiff experienced harassment and adverse treatment by Defendants due to his religious beliefs.

53.

Mr. King's coworkers who were white were treated more favorably and were not subjected to harassment or adverse treatment by Defendants in regards to the facial hair/beard worn by Plaintiff for numerous years. Even though Mr. King submitted the requested documents to show his religious belief that condone the facial hair, the new Chief reprimanded Mr. King for non compliance of Officer grooming requirements.

54.

As a direct and proximate result of the discriminatory conduct by the Defendant, Mr. King has suffered injury including, but not limited to, loss of

wages and benefits of employment even though his religious beliefs rationalize the wearing of the facial hair.

55.

The Defendants retaliated against Mr. King for complaining about process and the discrimination he was experiencing when he was best suited for the promotion to Captain and then eventually Chief of Police but was not allowed to be promoted due to a conspiracy to place a white individual in that position by the City Manager and condoned by the City Council, in violation of Title VII, 42 U.S.C. § 2000e-3(a)

56.

Defendants' alleged justification of Mr. King's adverse working environment was pretextual.  Plaintiff was not insubordinate or violating company policies when he would not sign a document which would ultimately take away his rights to appeal the improper punishment on an alleged complaint from a citizen of Hampton.  Rather, he was forced to resign before being terminated for opposing Defendant's numerous unlawful employment practices.

57.

As a direct and proximate result of the retaliatory conduct by the Defendants, Mr. King has suffered injury including, but not limited to, loss of wages and benefits of employment.

58.

The Defendants retaliated against Mr. King for complaining about the discriminating procedures Defendants appeared to be engaging in when promoting a new Chief of Police that was the only white candidate, and eventually Defendants forced the resignation of his employment on June 22, 2022, in violation of 42 U.S.C. § 2000e, *et seq*.

59.

Defendant's alleged justification of Mr. King's suspension, demotion and cut in wages was pretextual. Plaintiff was not insubordinate or violating company policies. Rather, he was being demoted or suspended for opposing Defendant's numerous unlawful employment practices, including his belief that Defendants was committing religious discrimination and therefore violating 42 U.S.C. § 2000e-3(a)), *et seq*.

60.

As a direct and proximate result of the retaliatory conduct by the Defendants, Mr. King has suffered injury including, but not limited to, loss of wages and benefits of employment.

## **COUNT 6—Breach of Contract**

61.

Mr. King realleges and hereby incorporates by reference paragraphs 1-60 of this Complaint with the same force and effect as if pleaded separately herein.

62.

Pursuant to the Agreement Defendants entered with Mr. King, Defendants owed duties to Plaintiff, including, but not limited to: payments under a performance review incentive plan, and that he could be punished, suspended or demoted without showing cause only with proper notice and allowing Plaintiff the opportunity to exhaust all due process or appeal rights prior to any enforcement of a disciplinary action on an alleged complaint from a citizen of the City of Hampton.

63.

Defendants violated and breached the duties Defendants owed to Mr. King when Defendants:

(a) Failed to pay Mr. King  the 3.5 percent salary raise he earned during his last  year of employment with Defendants;

(b) Punishing Plaintiff in his employment through suspensions and demotions without allowing the proper due process to defend himself; and

(c) Forcing his resignation without allowing him to exhaust all due process or appeal rights prior to any disciplinary action for cause was enforced.

64.

Defendants' violation and breach caused Mr. King to suffer damages.

65.

As a result of Defendants' unlawful employment practices, Mr. King has been damaged including, but not limited to, lost wages.

## COUNT 7—Attorney's Fees

66.

Larry king realleges and hereby incorporates by reference paragraphs 1-65 of this Complaint with the same force and effect as if pleaded separately herein.

67.

Defendants' wrongful actions against Plaintiff are in bad faith, Defendants has been stubbornly litigious, and Defendants has caused Plaintiff unnecessary trouble and expense, thereby entitling Mr. King to an award of attorney fees under O.C.G.A. § 13-6-11.

## COUNT 8—Punitive Damages

68.

Larry King realleges and hereby incorporates by reference paragraphs 1-67 of this Complaint with the same force and effect as if pleaded separately herein.

69.

Pursuant to 42 U.S.C. §§ 1981a(a)(1) and 1981a(b)(1), Mr. King shall be entitled to punitive damages to deter and punish Defendants from such other and further intentional discriminatory practices which were done with malice to the

federally protected rights of Mr. King and calculated with a specific intent to cause harm.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff requests this Honorable Court award him the following relief:

a)  Retroactive reinstatement to the Captain  position that the Plaintiff is entitled to under 31 U.S.C. § 3730(h)(2);

b)  Full back pay, doubled, retroactive to the date that Mr. King was forced to resign due to the unlawful employment practices supported by the City Officials, plus interest (see 31 U.S.C. § 3730(h)(2));

c)  Front pay from the date Mr. King resigned due being reprimanded by written notice of not signing a documents supporting the punishment of demotion and loss of pay prior to the appeal being heard;

d)  Compensatory damages, liquidated damages, and special damages sustained as a result of the Defendants' intentional and willful discrimination;

e)  Punitive damages in an amount to be determined by a fair and impartial jury based on Defendants' intentionally harmful and wrongful conduct;

f)  Payment of the calculated salary Mr. King would have earned in the Chief of Police position for the next 12 years(based on estimated retirement year);

g) Reasonable attorney's fees, expert witness fees, interest, and other litigation costs premised upon Defendants' bad faith (see O.C.G.A. § 13-6-11 and (28 U.S.C. § 2412(d) (2).)

h) For all other statutory, civil, general, special, extraordinary, injunctive, or other relief which this Honorable Court deems just and appropriate; and

i) A trial by jury on all issues so triable.

Respectfully submitted, this 28th day of July, 2022.

TUCKER AND ASSOCIATES LAW FIRM, LLC.

*/s/ Matthew A. Tucker*
Matthew A. Tucker
GA Bar No.: 803773

*Attorney for Plaintiff, Larry King*

Tucker & Associates Law Firm, LLC
89896 Tara Blvd., Suite 100
Jonesboro, Georgia 30236
(770) 473-4194
mtuckerlawfirm@bellsouth.net

**STATE OF GEORGIA**
**HENRY COUNTY**

*VERIFICATION*

       PERSONALLY APPEARED before the undersigned officer, duly authorized to administer oaths, comes, LARRY KING , who after first being sworn says and deposes that the facts set forth in the foregoing Verified COMPLAINT FOR DISCRIMINATION OF EQUAL RIGHTS AND CIVIL RIGHTS AGAINST LARRY KING AND OTHER SIMILAR SITUATED EMPLOYEES OF THE CITY OF HAMPTON, GEORGIA against James "Bo" Turner,Chief of Police, City of Hampton Police Department, City of Hampton Council, Alex Coheilis, City Planner, Mayor and others to be named later are true and correct.

       Further, Affiant sayeth not.

       This __16__ day of June, 2022

                                   LARRY KING

Sworn to and subscribed before me,

This __16__ day of June, 2022

**NOTARY PUBLIC**
**STATE OF GEORGIA**

## CERTIFICATE OF SERVICE

This hereby certifies that on August 1, 2022, I electronically filed the foregoing COMPLAINT FOR DAMAGES with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

**Russell A. Britt**
**Hall Booth Smith, P.C.**
191 Peachtree Street, NE, Suite 2900
Atlanta, GA 30303-1775
Phone: (404) 954-6939
rbritt@hallboothsmith.com

**TUCKER AND ASSOCIATES LAW FIRM, LLC.**

*/s/ Matthew A. Tucker*
Matthew A. Tucker
GA Bar No.: 803773

*Attorney for Plaintiff, Larry King*

Tucker & Associates Law Firm, LLC
89896 Tara Blvd., Suite 100
Jonesboro, Georgia 30236
(770) 473-4194
mtuckerlawfirm@bellsouth.net



**Matthew A. Tucker, Esq.**
**Jordan E. Riser, Esq.**
**Attorneys at Law**

## TUCKER & ASSOCIATES LAW FIRM, LLC
### The Ones You Can Trust in Criminal Defense & Personal Injury

8896 Tara Blvd. Bldg. #100, Suite B
Jonesboro, GA 30236
(P): (770)473-4194
(F): (770) 478-8614

**October 21, 2021**

7017 1450 0001 2071 7373
**VIA CERTIFIED MAIL NO.**

Mayor Steve Hutchinson, Mayor of the City of Hampton,
Henry County, Georgia
P.O. Box 400
Hampton, Ga 30228

RE:        Notification of Claim against City of Hampton, Georgia (Ante Litem Notice)
           Damages to Mr. Larry King for violation of his Constitutional rights and State Laws
           Date of Incident/injury (2013-2021current)
           Cause of Injury intentional violation of Mr. Larry King's civil rights and State Laws
           by City Council of Hampton, City Manager, Alex Cohilas and Hampton Police Department

TO:        City of Hampton, City Attorney, L'Erin Barnes Wiggins, City Manager, Alex Cohilas,
           Mayor Steve Hutchinson, City of Hampton, Georgia
           Ante Litem Notice Pursuant to O.C.G.A. § 36-33-5 (City of Hampton)
           Claimant:     Larry King
           Date of Loss: 2013-2021(current)

Dear Mayor Hutchinson:

    The purpose of this letter is to comply with any and all statutory Ante Litem Notice
Requirements notice is hereby given to City of Hampton, City Attorney, L'Erin Barnes
Wiggins, Hampton, Georgia; Alex Cohilas City Manager,  pursuant to the provisions
O.C.G.A § 36-33 of the existence of a Discrimination claim held by Larry King and other
harmed city employees not named yet against City of  Hampton, Georgia & Alex Cohilas along
with Hampton City Council & Police Department. Notice is hereby given of the following
causes of action which are known to exist at the present time. The purpose of this letter is to
comply with any and all statutory Ante Litem Notice requirements and to offer to settle all
claims against the City of Hampton. As you are aware, Georgia's Ante Litem Notice
requirements do not apply to claims under 42 U.S.C. § 1983 or to claims against City
officials or employments sued in their individual capacity.

Our office is investigating the claims of violations of Larry King's Civil Rights through the agents of Hampton Police Department, City of Hampton City Council members, Alex Cohilas, City Manager, through their manipulation of the city charter regulations and ordinances for personal discrimination of Larry King and any another African American working with the City of Hampton. Larry King has been harmed through predetermined promotions of his employment which was not compliant to the City Policy, Rules and Requirements. During this investigation numerous other city employees have confirmed these injustices as well as shown the same treatment towards them.

***Amount of Loss Claim: $2.8 Million, Loss of income itself is in excess of $1.1Million on a scale of him working the next 12 years.

Be in known that service ad Notice of this Ante Litem Notice was formally served upon the Mayor of City of Hampton on this 21ᵗʰ day of October, 2021.

To all parties involved Govern yourself accordingly.

Sincerely,

Matthew A. Tucker, Esq.
GA Bar # 803773
Attorney for Larry King

***This letter is an offer to settle and compromise our client's claims and is submitted solely for the purpose of compromise and settlement negotiations. This letter does not constitute any admission against our client's interest. Under law, statements made in a view of compromises are admissible at trial, so as to encourage the settlement of controversy by permitting parties to discuss their case candidly with assurances that admissions and proposals for compromises made in the course of their good faith settlement negations may not be used against them in any subsequent lawsuit